{¶ 11} I respectfully dissent. For the reasons below, I would find that the trial court erred in allowing Lewis to testify as to the results of the lab report prepared by Miller which concluded that the crack cocaine weighed 5.19 grams. Therefore, I would reverse and remand because without evidence that the crack cocaine weighed 5.19 grams, the state would be unable to prove an essential element of its case.
 {¶ 12} Appellant concedes that trial counsel failed to continue to object to the testimony of Lewis as to the conclusion of the report prepared by Miller ("Miller Report").[1]
Therefore, Appellant has waived all but plain error. Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894; State v. Phillips, 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 13} In the instant matter, it is undisputed that Miller did not testify as to the conclusions of the Miller Report. Instead, Lewis testified that the report concluded that the substance was crack cocaine and that it weighed 5.19 grams. She admitted under oath that she did not prepare the Miller Report. It is well-settled that in the absence of a court appearance by the preparer of the report, a laboratory report prepared by a qualifying agency or accredited institution of higher learning may nevertheless be admissible as prima facie evidence of content, identity, and weight, or the existence or number of dosages of the substance tested, so long as the parties comply with certain procedural requirements proscribed in R.C. 2925.51.State v. Stephens (1998), 126 Ohio App.3d 540, 552,710 N.E.2d 1160. Accordingly, in order to affirm the admission of Lewis' testimony as to the identity and weight of the substance, one must determine whether the Miller Report adhered to the requirements proscribed in R.C. 2925.51.
 {¶ 14} R.C. 2925.51(A) mandates that the report be signed by the person performing the analysis and contain a copy of a notarized statement by that person. Additionally, the report must state that the signer is an employee of the laboratory issuing the report and that the employee performed the analysis as part of his regular duties. Id. The report shall also include "an outline of the signer's education, training and experience for performing an analysis of materials included under this section." Id. The report must contain an attestation that the laboratory tests were conducted with due caution and in accordance with established and accepted procedures. Id. Furthermore, the report is required to bear notice of the right of the accused to demand, and the manner in which to demand, the testimony of the signer of the report. R.C. 2925.51(D). In addition, R.C. 2925.51(B) requires service of the report to the attorney representing the accused prior to any proceeding in which the report may be utilized. Finally, the report is not prima facie evidence of the contents, identity and weight of the substance tested when the accused, within seven days of receiving the report, demands the testimony of the person signing the report. See R.C. 2925.51(C).
 {¶ 15} In the instant matter, the Miller Report does not meet one of the mandates proffered in R.C. 2925.51. Instead, the report merely states, "One plastic bag containing numerous pieces of off-white rock-like material. Analyzed and found to be POSITIVE for COCAINE. Class II, wt. = 5.19 grams. SMM-TLK-CLL." The only additional information contained in the Miller Report is the lab number, bag number and RMS number. Failure to meet the procedural requirements proscribed in R.C. 2925.51 violates the statute and renders the report inadmissible. State v. Bates,
Allen App. No. 1-03-83, 2004-Ohio-2219; State v. Bethel,
Tuscarawas App. No. 2002AP0010, 2002-Ohio-5437. Accordingly, I would find that the trial court correctly denied the State's request to admit the Miller Report into evidence.
 {¶ 16} Without the admittance of the Miller Report, I would conclude that the trial court could not permit Lewis to testify as to the conclusion of the report because she did not have any personal knowledge as to its contents. In State v. Crager,
Marion App. No. 90-4-54, 2005-Ohio-6868, the Third District determined that a witness could not testify as to the conclusions in an inadmissible report where the witness was not the preparer of the report, nor did he have personal knowledge of the report's conclusions. In that case, the witness testified that, although he did not prepare the report, he did perform a technical check on the preparer's work. Id. He then went on to testify to the conclusions in the preparer's report. Id. The court found that while the witness had some personal knowledge, he only had personal knowledge of findings in the preparer's report. Id. The court reasoned:
 {¶ 17} "While he did perform the technical review of [the preparer's] work in this case, it seems that review merely involved checking her notes, to make sure that she followed correct procedures and came to a reasonable conclusion. He did not observe or supervise her work. * * * Additionally, throughout [the witness's] testimony the DNA conclusions he gives come solely from [the preparer's] report, which should not have been admitted into evidence." Id.
 {¶ 18} The court held that, where the report is inadmissible, the mere review of the report, absent any independent testing, does not qualify the witness to testify to conclusions in the report. Id. See, also, State v. Jarrett, Auglaize App. No. 2-05-37, 2006-Ohio-882; State v. Danner (June 21, 1996), Wood App. No. WD-95-111.
 {¶ 19} As in Crager, the testimony of Lewis in this case reveals that she did not have personal knowledge as to the conclusion of the Miller Report. Lewis testified that while her initials are upon the Miller Report, she did not conduct the test, nor did she observe Scott Miller perform the test. She merely recalls being present in the lab on that day, although she cannot recall the day that Miller conducted the test.[2] As such, Lewis was not qualified to testify as to the conclusions in the Miller Report. Accordingly, I would conclude that, because the Miller Report was inadmissible and Lewis did not prepare the report or have personal knowledge of its conclusions, any mention by Lewis that the crack cocaine initially weighed 5.19 grams was improper and should have been excluded. Likewise, the trial court should have excluded any explanation by Lewis regarding the weight differences in the Miller Report and her report.
 {¶ 20} Having decided that the trial court should have excluded Lewis' testimony as to the conclusions in the Miller Report and the differences between the Miller Report and her report, because Appellant's counsel failed to continue to object to the admission of such evidence, one must still determine whether a manifest miscarriage of justice occurred as a result of the improperly admitted evidence. In so doing, one must decide whether, but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894; State v. Phillips, 74 Ohio St.3d 72,83, 1995-Ohio-171, 656 N.E.2d 643. Here, without the Miller Report and testimony of Lewis as to its conclusions, the jury would never have been presented with evidence that the crack-cocaine initially weighed 5.19 grams. Instead, the jury would have only heard that the crack cocaine weighed 4.91 grams. Accordingly, without evidence establishing the weight of the crack cocaine to be over five grams, the State would be unable to prove an essential element of its case, i.e. that the substance "equals or exceeds five grams but is less than ten grams of crack cocaine." R.C. 2925.11(C)(4)(c). Consequently, I would sustain Appellant's second assignment of error.
 {¶ 21} Furthermore, the determination as to Appellant's second assignment of error would render moot Appellant's remaining assignments of error pursuant to App.R. 12(A). Accordingly, I would reverse and remand.
[1] The majority maintains that "Burrell did not object to Lewis' testimony that Miller weighed the crack at 5.19 grams, nor did he object to Lewis' explanation of the weight discrepancy." I note, in the interests of clarifying the facts revealed in the record, that the trial court initially sustained Appellant's objection to Lewis' mention of the results indicated in the Miller Report. However, the trial court subsequently allowed, without objection, the prosecutor to ask the same question again. I also note that the record reveals that Appellant did in fact object to Lewis testifying to the differences in the conclusions in the weight contained her report and the Miller report, but that the trial court sustained trial counsel's objection.
[2] The majority makes the assertion that "the first analyst, Miller, weighed the crack on the day it was discovered in Burrell's car * * *." A review of the record, however, does not establish this fact. The lab report does not prescribe the date the substance was tested. Further, Lewis testified that while it is common practice to weigh a substance the day of its arrival, she can only testify that substances can be weighed within the week of their arrival. Therefore, due to the absence of Miller's testimony, the date the crack was tested is unknown.